IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:09CR3069 |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM AND ORDER |
| KELVIN L. STINSON, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant Kelvin L. Stinson has moved to suppress the out-of-court identification made by government witness Marcus L. Green on the grounds that law enforcement used an overly suggestive and prejudicial out-of-court photo lineup. Filing No. 29. For the reasons discussed below, the defendant's motion will be denied.

FACTUAL FINDINGS

During interviews conducted on June 10 and June 12, 2009, Officer Steven W. Schellpeper of the Lincoln Police Department ("LPD") presented photo lineups to government witness, Marcus Green. The photo lineups were prepared by DataWorks, a computer software system which allows an officer to identify and select the physical attributes of the suspect under investigation, and using images and information within LPD's database, compile a group of mugshots of people whose appearance is similar to the suspect. From this grouping, the officer can choose which images should be presented to the potential witness for identification of the suspect. The computer then randomly displays the chosen images and creates a photo lineup.

On June 10, 2009, Officer Schellpeper met with Green, and his counsel, John Vanderslice, at the Saline County Jail to discuss whether Green knew and could identity five different suspects, including two suspected drug dealers nicknamed "Nacho" and "Spook." Prior to arriving at the jail, the officer prepared five separate lineups for Green's review. The officer had no advance information indicating Green may have information concerning defendant Stinson, and therefore no photo lineup including Stinson was prepared and presented to Green at the June 10, 2009 interview.

During the interview on June 10, 2009, Green indicated he had previously purchased crack cocaine from a person identified as "Kevin" at 33rd and Holdrege streets in Lincoln, Nebraska on two different occasions. Green explained "Kevin" was between five feet and five feet, one inches tall; had short, wavy hair; was from Kansas City; and drove a maroon Cutlass with big rims and provided Green with a German-made .22-caliber handgun on one occasion. Green stated "Kevin" had a cousin named Solomon, who had been "turned in" by "D-Ro" and was now "in trouble." Filing No. 50, at CM/ECF p. 21. Green did not state "Kevin" was currently in the Saline County Jail.

At the time of the June 10 interview, Stinson and Green were both facing federal firearms charges, and for a period of more than two months prior to the interview, both were confined at the Saline County Jail awaiting their federal trials. Filing No. 53. They saw each other at the Saline County Jail's church services, but did not speak to each other before Green was interviewed by Officer Schellpeper.

Based upon Green's statements about "Kevin," Officer Schellpeper asked if he could return to present another photo lineup for Green's review. Green and his counsel agreed.

Officer Schellpeper again used the DataWorks software to create a photo lineup including Stinson's photograph and presented it to Green on June 12, 2009. See, filing no. 38-2. Green's attorney was not present at the second interview. Officer Schellpeper asked Green to look at the photographs in the Stinson photo lineup to see if he could identify anyone, and if so, explain how he knew the person, and if he witnessed or knew whether the identified person was involved in illegal activity. Officer Schellpeper never mentioned "Kevin" or Stinson by name, and stated Green may or may not recognize someone in the photo lineup. The six 8-inch by 11-inch black and white photographs were shown to Green. When Stinson's photograph was displayed, Green immediately stated, "That's Kevin," adding he did not know Kevin's last name. Although the background behind Stinson's photograph was somewhat lighter, and his shirt was a lighter color than the others in the lineup, the people depicted had similar physical appearances. Filing No. 38-2. Green and Stinson were housed together in the Saline County Jail by the federal government for several weeks prior to the photo lineups. See, filing no. 53.

## LEGAL ANALYSIS

To prevail on his motion to suppress, the defendant must first show that the photographic lineup procedure used by Officer Schellpeper was impermissibly suggestive. If the defendant meets this burden, the court must consider the totality of the circumstances to determine whether the suggestive procedures created "a very substantial likelihood of irreparable misidentification." United States v. Johnson, 56 F.3d 947, 953 (8th Cir. 1995) (quoting Manson v. Brathwaite, 432 U.S. 98, 116 (1977)); United States v. Ramsey, 999 F.2d 348, 349 (8th Cir. 1993). See also, United States v. Puckett, 147 F.3d 765, 769 (8th Cir. 1998) (citing Neil v. Biggers, 409 U.S. 188 (1972); Simmons v. United States, 390 U.S. 377, 384 (1968)); Dodd v. Nix, 48 F.3d 1071, 1074 (8th Cir. 1995). Factors bearing on the reliability of the identification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior

description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. Biggers, 409 U.S. at 199-200.

Relying on U.S. v. Rogers, 387 F.3d 925, 929 (7th Cir. 2004), the defendant claims the photo lineup presented to Green was impermissibly suggestive because prior to the photo identification made by Green, the government housed Stinson and Green in the same jail pending trial. In Rogers, defendant Rogers, who was facing federal drug charges, decided to cooperate with the government, and was asked to review a photo lineup and, if possible, identify a drug supplier he briefly saw ten months earlier in a dark parking lot. The alleged drug supplier, later identified as Owens, was depicted in the photo lineup, but Rogers did not identify him. Approximately three weeks later, while awaiting his change of plea hearing, Rogers was housed in a cell at the federal courthouse with Owens, and immediately claimed he recognized Owens upon entering the cell. Owens moved to suppress this identification testimony. Rogers held that under the facts presented, Rogers' identification of Owens was not reliable and must be suppressed due to the substantial likelihood of irreparable misidentification. The Rogers court was not asked to consider, and did not decide if the photo lineup itself was impermissible suggestive.

Unlike Rogers, this court must first determine if the defendant has met his burden of showing the photo lineup shown to Green was impermissibly suggestive. Under the facts presented, the defendant has failed to meet this burden. Green was asked to look through black and white, head and shoulder photographs of males with physical characteristics similar to defendant Stinson's. It was Green, not Officer Schellpeper, who identified "Kevin" as a person who previously sold cocaine to Green. Officer Schellpeper never asked Green to identify the perpetrator of any specific crime, and Green did not previously view, but fail to identify Stinson in a photo lineup. Without any prompting from Officer Schellpeper, Green stated he had personally met with a person named "Kevin" to buy cocaine on two occasions, with

a weapon involved in one such occasion; and Green explained Stinson's appearance, the car he drove, the town he came from, and his cousin's identity and potential legal problems. The photo lineup was created in response to Green's disclosure of this information, but at the time the lineup was administered, the officer never mentioned "Kevin" as the person of interest in the lineup, and never indicated Green could or should recognize anyone depicted in the lineup. Although Green and Stinson were housed together in the Saline County Jail before the photo lineup was presented to Green, this fact may present fertile ground for cross-examining Green at trial, but it does not render the photo lineup impermissibly suggestive or tend to show a likelihood of irreparable misidentification in violation of Stinson's due process rights. See, e.g., U.S. v. Boston, 494 F.3d 660 (8th Cir. 2007) (holding a photo lineup was not impermissibly suggestive where the lineup contained pictures of six people with similar physical characteristics and no other identifying information, the photos were presented the witness in random order, and the officer made no suggestive sounds or gestures during the lineup); U.S. v. Daily, 488 F.3d 796, 804 (8th Cir. 2007) (denying defendant's motion to suppress a photo identification where the witness was shown an array of photographs, not a single photograph, the defendant's photo was not displayed in more than one lineup shown, and authorities conducted a second photo array only after the witness indicated she believed she identify the robber).

Accordingly,

IT IS ORDERED that defendant Kelvin L. Stinson's motion to suppress, (filing no. 29), is denied.

DATED this 1st day of December, 2009.

BY THE COURT:

*Richard G. Kopf*
United States District Judge