IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> KELVIN L. STINSON, ) <br> ) <br> Defendant. ) | Case No. 4:09CR3069-2 <br><br> **TENTATIVE** <br> **FINDINGS** |

I am in receipt of the revised presentence investigation report and addendum in this case. Except for the defendant's objection to obstruction of justice and role in the offense (filing 109) and the government's objection to drug quantity, granting the defendant an acceptance of responsibility reduction and the court's method of varying in accordance with S. 1789 (filing 114), there are no objections or motions for departure or variance.

IT IS ORDERED that:

(1) The undersigned will consult and follow the Guidelines to the extent permitted and required by *United States v. Booker*, 543 U.S. 220(2005) and subsequent cases. *See*, *e.g.*, *Gall v. U.S.*, --- S.Ct. ----, 2007 WL 4292116 (2007). In this regard, the undersigned gives notice that, unless otherwise ordered, he will (a) give the advisory Guidelines such weight as they deserve within the context of each individual case and will filter the Guidelines' general advice through §3553(a)'s list of factors[1]; (b) resolve all factual disputes relevant to sentencing by the greater weight of the evidence and without the aid of a jury; (c) impose upon the government the burden of proof on all Guideline-enhancements; (d) impose upon the defendant the burden of proof on all Guideline-mitigators; (e) depart from the advisory Guidelines, if appropriate, using pre-Booker departure theory; and (f) in cases where a departure using pre-Booker departure theory is not warranted, deviate or vary from the Guidelines when there is a principled reason which justifies a sentence different than that called for by application of the advisory Guidelines.[2]

---

[1] However, I will no longer give the Guidelines "substantial weight."

[2] *See* note 1.

(2)   Regarding the objections:

(A)   With exception noted below, all objections will be resolved at an evidentiary hearing with sentencing to follow.  A total of 1.5 hours is allocated to the evidentiary hearing and sentencing.  My judicial assistant shall reschedule sentencing as is necessary.

(B)   To the extent that the government objects to the method by which I am varying downward with S. 1789 in mind, the government misunderstands my approach.  I am not ignoring relevant conduct because I convert crack to powder by using the low number of the base offense level for the actual amount of crack as the *starting point*.  To the degree that the defendant distributed more than that low-end amount, such a fact may used at sentencing and may justify a sentence at the higher end of the range for powder, or, indeed, above the range for powder.  As counsel for the government well knows (because I shared the development of the instant method with Assistant United States' Attorneys and others as it was developed[3]), any other method (such as using the actual weight to begin the conversion from crack to powder) results in anomalous results.  This is because the crack Guidelines, as they are presently structured, are algorithmic, and not liner, to account for the artificial nature of the statutory minimums.  Since I am presently bound by the artificially high statutory minimums, but I must have a uniform starting point for variance purposes, the use of the low-end of the present base offense level for the crack attributable to the defendant is the best and only option I have available to me.[4]  As made, the government's objection to the method of

---

[3]Indeed, the government candidly, but perhaps with a slight sneer, concedes that "[f]rom a number of *interesting* emails we have had the opportunity to read about the evolution of the method now being employed by the Probation Office . . . ." (Filing 115 at CM/ECF p. 4 (emphasis in original).

[4]I note that the Sentencing Commission has been contacted by our probation office, but the Sentencing Commission staff is unwilling to share the method by which S. 1789 would be

-2-

variance proposed in the presentence report is denied.[5]

(3) Except to the extent (if at all) that I have sustained an objection or granted a motion or reserved an issue for later resolution in the preceding paragraph, the parties are herewith notified that my tentative findings are that the presentence report is correct in all respects.

(4) If **any** party wishes to challenge these tentative findings, said party shall, as soon as possible, but in any event at least five (5) business days before sentencing, file in the court file and serve upon opposing counsel and the court a motion challenging these tentative findings, supported by (a) such evidentiary materials as are required (giving due regard to the requirements of the local rules of practice respecting the submission of evidentiary materials), (b) a brief as to the law and (c) if an evidentiary hearing is requested, a statement describing why an evidentiary hearing is necessary and how long such a hearing would take.

(5) Absent submission of the information required by the preceding paragraph of this order, my tentative findings may become final and the presentence report may be adopted and relied upon by me without more.

(6) Unless otherwise ordered, any motion challenging these tentative findings shall be resolved at sentencing.

May 18, 2010.

BY THE COURT:
*Richard G. Kopf*
United States District Judge

---

implemented by the Commission if adopted by the House.

[5] However, if, at sentencing, the government has a better and fairer method that implements the evident intent of the unanimous Senate Judiciary Committee (including a former United States Attorney) to impose a ratio of 18 to 1 I will be pleased to hear it.